UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ARMEN MANUKIAN,

                Plaintiff,          22-CV-10724 (JLR) (OTW)

            -against-           **OPINION & ORDER**

PRITCHARD INDUSTRIES, INC. and NEW YORK
CITY,

                Defendants.
-------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

I.    **INTRODUCTION**

*Pro se* Plaintiff Armen Manukian ("Mr. Manukian") filed this case on November 14, 2022, against Defendants Pritchard Industries, Inc. ("Pritchard") and New York City (collectively, "Defendants") in the Supreme Court of the State of New York, New York County, which Pritchard[1] timely removed to this Court on December 20, 2022. (*See* ECF 1 at 1). Mr. Manukian, a member of Local 32BJ Service Employees International Union ("the Union"), alleges that he was not paid wages while employed by Pritchard and was terminated without reason. (ECF 1 at 5). Before the Court is Pritchard's motion to compel Mr. Manukian's claims to arbitration, following mandatory mediation pursuant to a collective bargaining agreement, and stay the case. (ECF 7 at 7).[2] For the reasons set forth below, Pritchard's motion to compel this

---

[1] New York City has not appeared in this case. In a supplemental September 20, 2023 filing, Mr. Manukian includes a long list of unclear allegations against the City that include "not giving [him] a safe long-term job or not giving a safe, clean place to live after so many hours, months of programs, trust in their City services, job interviews, [and] compliance with their local rules . . . ." (ECF 14 at 3).

[2] A ruling on a motion to stay litigation pending arbitration is a non-case-dispositive motion properly before me under the Honorable Jennifer L. Rochon's general pretrial supervision referral under 28 U.S.C. § 636(b)(1). *See, e.g.*, *Kumaran v. Vision Fin. Markets, LLC*, 20-CV-3871 (GHW), 2022 WL 17540669, at *2 (S.D.N.Y. Dec. 6, 2022)

case to mediation and arbitration is **GRANTED**. The case is hereby **STAYED in its entirety pending the outcome of mediation and arbitration**. To the extent Pritchard further moves for fees and costs, the motion is **DENIED**.

## II.   BACKGROUND

Mr. Manukian, an Armenian immigrant who has experienced intermittent homelessness, alleges he found and secured a full-time janitorial position at Pritchard through a list provided by his Union. (ECF 1-1 at 5, 11; *see also* ECF 14). He worked for Pritchard as a Union member for four months from June 5, 2021, to September 10, 2021, at various locations, including 399 Park Avenue. (ECF 1 at 5-6). Mr. Manukian claims that Pritchard failed to pay him wages for his four months of work, and that he was "left unemployed for no reason." (ECF 1 at 6).[3] He seeks compensation of $31,320 "for all the hours of work in the buildings of the city through this company for the entire period that [he] was deliberately not paid." (ECF 1-1 at 3). Mr. Manukian does not allege that he raised these claims with his Union or Pritchard before filing this suit, although he vaguely alleges "no one listened to me" and "there is no support at this time." (ECF 1-1 at 6). Mr. Manukian does appear to have submitted a Notice of Claim to the Office of the Comptroller of the City of New York, which he attached to his Complaint. (ECF 1-1 at 12).[4]

---

("'District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive . . . .'") (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021)).

[3] Mr. Manukian's handwritten Complaint, while difficult to decipher, states "I believe that the company did not pay the hours of work from 06/05/21 to 09/10/21. . . . Pritchard industry is a big company and they deliberately harmed me by not allowing me to work in one place and earn money too and learn more, treated me hastily and left me incompetently for no reason. My place of work was 399 Park Ave." (ECF 1-1 at 6).

[4] Mr. Manukian's Notice of Claim states: "I was hired by a large company in the city of Prichard [sic] industry through BJ Union for at least 6 months full time and I was left unemploed [sic] for no good reason while the

Pritchard denies that Mr. Manukian was not paid his wages or that he was terminated without reason. (ECF 6 at 2). Rather, Pritchard asserts that Mr. Manukian was employed "on a limited basis as a vacation replacement." (ECF 7 at 7). Pritchard further provided Mr. Manukian with a notice he signed on June 1, 2021, titled "To: Replacement Personnel – Summer/Seasonal" that stated: "[t]his is to inform you that you are being hired as a summer/seasonable temporary worker. You will replace permanent personnel who are on vacation. At the end of the vacation period your employment will be terminated. You will be assigned to **VARIOUS LOCATIONS.**" (ECF Nos. 6 at 2-3, Declaration of Jerrold F. Goldberg, and 6-4, Ex. D) (emphasis in original).[5] Mr. Manukian acknowledges he signed this form as a Union member, but said he did not understand what he was signing. (ECF Nos. 11 at 1 and 14 at 8).[6] Pritchard also points out that Mr. Manukian included with his Complaint copies of his first and last paystub for the pay periods 6/5/2021 – 6/11/21 and 9/4/21 – 9/10/21,[7] indicating that Pritchard paid him for at least portions of this period of employment. (*See* ECF Nos. 7 at n.2, and 1-1 at 10).

On December 27, 2022, after removing this case to federal court under 28 U.S.C. § 1466(b), Pritchard filed its motion to stay this case and to compel Mr. Manukian to mediate and arbitrate his claims pursuant a collective bargaining agreement that governed the

---

company and union used me in different buildings for 4 months. . . . I demand compensation for all the work in the buildings that they promised to send to direct deposit."

[5] The Court notes, however, that this temporary worker notice form contained a final sentence: "The dates you will work are _____ to _____ 2021." Pritchard failed to fill in the dates of employment, leaving room for Mr. Manukian's confusion. (ECF 6-4 at 2).

[6] Specifically, Mr. Manukian states: "Yes, I signed something without understanding, but only trusting the company's business and that I work responsibly in the same building and that I am from union too."

[7] Mr. Manukian's September 2021 paycheck shows a $105 deduction for "32BJ Union Dues." (ECF 1-1 at 10).

terms of his employment with Pritchard, i.e., the RAB Contractors Agreement between Local 32BJ, Service Employees International Union and the Realty Advisory Board on Labor Relations, Inc. (the "CBA"). (*See* ECF Nos. 5 – 7). Mr. Manukian filed responses on December 29, 2022, and September 20, 2023. (ECF Nos. 11 and 14).[8] Under the CBA, a "grievance may first be taken up directly with a representative of the Employer and a representative of the Union." (ECF 6-1, Ex. A, Article V Grievance Procedure, 2(a)). The CBA provides for mandatory mediation of wage and hour claims:[9]

> The Employee and the Union agree that in the event that an Employee (on behalf of the Employee and/or others) asserts statutory wage and hour claim(s) against the Employer(s), including claims for unpaid minimum wages and/or overtime pay, **prior to the filing of any such claim(s) in court, the Employer and Employee shall engage in mandatory mediation** to attempt to narrow or resolve the claims(s). The RAB and Union agree to establish a mediation process for handling such claims. The following principles shall apply: (a) The Employee(s) must initiate mediation by written notice to the Employer, or the Employer must initiate mediation by written notice to the Employee(s) and Employee's counsel, as appropriate.

(ECF 6-1, Ex. A, Article XVI, § 63 – Wage and Hour Claims) (emphasis added). The CBA provides for a grievance procedure "[t]o endeavor to adjust without arbitration any issue between the parties which under this Agreement the parties are obligated to submit to the Arbitrator." (ECF 6-1, Ex. A, Article V, Grievance Procedure, 1(b)). Where mediation and the CBA's grievance

---

[8] While Mr. Manukian styled his supplemental September 20, 2023, filing as a motion for summary judgement, the Court construes the filing as further opposition to Pritchard's motion to compel.

[9] Although the CBA was not attached to or referenced in the Complaint, the Court considers the CBA (and, when necessary, other materials of undisputed authenticity and accuracy that were attached to the parties' submissions) for purposes of this motion to compel. *See Begonja v. Vornado Realty Trust*, 156 F. Supp. 3d 402, 405 (S.D.N.Y. Jan. 29, 2016) ("In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA") . . . the court applies a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), and courts therefore consider materials outside the Complaint, *see, e.g.*, *HBC Solutions, Inc. v. Harris Corp.*, No. 13-CV-6327 (JMF), 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014)).

procedures fail to resolve a Union member's claims, however, the individual is bound to arbitrate their claims:

> There shall at all times be a Contract Arbitrator to decide all differences arising between the parties as to interpretation, application or performance of any part of this Agreement and such other issues as the parties are expressly required to arbitrate before the Arbitrator under the terms of this Agreement.

(ECF 6-1, Ex. A, Article VI Arbitration, 1). The arbitration provision further directs that "[t]he procedure herein outlined . . . shall be the sole and exclusive method for the determination of all such issues." *Id*. at 4.

### III. DISCUSSION

#### 1. Legal Standard

Section 2 of the Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has directed courts to "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (citation and internal quotation marks omitted). Section 3 of the FAA further provides that if any suit is brought in federal court "upon any issue referable to arbitration," the court, "upon being satisfied" that an issue involved in the suit is referable to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Further, in the context of a labor dispute governed by a collective bargaining agreement, "'an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement' before bringing an action in federal court." *Ukshini v. Comity Realty Corp.*, No. 15-CV-6214 (PKC), 2016 WL 1733468, at *2 (S.D.N.Y.

5

Apr. 29, 2016) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)).

The party moving to compel arbitration bears the initial burden of showing that an arbitration agreement exists by a preponderance of the credible evidence. *Fleming v. J. Crew*, No. 16-CV-2663 (GHW), 2016 WL 6208570, at *3 (S.D.N.Y. Oct. 21, 2016) (citing *Couch v. AT&T Servs., Inc.*, No. 13-CV-2004 (DRH) (GRB), 2014 WL 7424093, at *3 (E.D.N.Y. Dec. 31, 2014)); see *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "A preponderance of the evidence means such evidence which, when considered and compared with that opposed to it, produces a belief that what is sought to be proved is more likely true than not." *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-4570 (LAK) (KHP), 2017 WL 7309893, at *2 (S.D.N.Y. Nov. 20, 2017) (citation omitted), *adopted by*, No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018), *aff'd*, 763 F. App'x 101 (2d Cir. 2019).

If the movant meets this *prima facie* showing, the burden shifts to the non-movant to show that: (i) they did not consent to arbitration, (ii) the arbitration agreement is invalid or unenforceable, or (iii) the arbitration agreement does not encompass the claims the movant wishes to arbitrate. *See Porcelli v. JetSmarter, Inc.*, No. 19-CV-2537 (PAE), 2019 WL 2371896, at *3 (S.D.N.Y. June 5, 2019) (citations omitted); *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014), (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-92 (2000), *aff'd*, 633 F. App'x 544 (2d Cir. 2015).

When deciding a motion to compel arbitration and stay all or part of a litigation pursuant to the FAA, the court applies a "standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Nicosia*

*v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Under this standard, the court considers all relevant, admissible evidence contained in the pleadings, admissions on file, and affidavits. *Id.* (citations omitted). In the absence of a genuine issue of material fact regarding the formation of the arbitration agreement, the motion to compel and to stay the litigation (in whole or in part) must be granted if the dispute falls within the scope of the arbitration agreement.[10] *Id.*

### 2. Application

#### i. Mr. Manukian is Bound by the Valid Mediation and Arbitration Agreement in the Union's CBA.

No genuine issue of material fact exists regarding whether Mr. Manukian is a Union member bound by the CBA. Mr. Manukian does not dispute that he was a Union member during his employment with Pritchard or that he is bound by the CBA. (ECF 1-1 at 5). In fact, Mr. Manukian attached to his Complaint the list he received from the Union on which he found the job at Pritchard, stating: "I found a company Pritchard Industry in the list union and agreed to work as a full-time janitor for 6 months . . . ."). (ECF 1-1 at 5, 11). He further attached two paystubs for the disputed employment period with Pritchard, one of which lists a deduction for his Union dues. (ECF 1-1 at 10; *see also supra* at n.7). The CBA to which Pritchard is bound thus governs the terms and conditions of Mr. Manukian's employment. This CBA clearly mandates engaging in the Union's mediation process for wage and hour claims, such as those Mr. Manukian alleges, before filing any lawsuit.

---

[10] Separate and apart from the issue of the formation of an arbitration agreement, the Court accepts as true the factual allegations in the complaint that relate to the underlying dispute between the parties for purposes of a motion to compel. *See, e.g., Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012).

Mr. Manukian does not indicate that he filed a grievance with the Union or has attempted to mediate his claims, a prerequisite to arbitration, as required under the CBA. Mr. Manukian alleges only that "no one listened to me" and "there is no support at this time." (ECF 1-1 at 6). Mr. Manukian further appears to be familiar with the Union's grievance process, as he filed a December 27, 2019, grievance with the Union for unpaid wages for a 24-hour period. (ECF 14 at 16). While it is unclear how the separate December 2019 wage and hour grievance relates, if at all, to Mr. Manukian's 2021 wage and hour claims in this case, it does indicate that Mr. Manukian understands how to file such a complaint with the Union. Based on the records Mr. Manukian filed, his 2019 complaint was resolved by the Union's Contracts and Grievance Center on February 5, 2020. (ECF 14 at 17). Given that Mr. Manukian is a Union member asserting straightforward wage and hour claims against Pritchard, the Court compels Mr. Manukian's claims to arbitration, should they not first be resolved in the grievance and mandatory mediation procedures set forth in the CBA. *See Ukshini*, 2016 WL 1733468, at *2 (granting defendant's motion to compel mediation and arbitration under an earlier version of the same CBA between SEIU Local 32BJ Union and the Realty Advisory Board, and noting that "'an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement' before bringing an action in federal court.").

    ii. *This Case is Stayed Pending Mediation and Arbitration.*

The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to

arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596, 193 L. Ed. 2d 471 (2015). Pritchard has requested such a stay here.[11]

Accordingly, the Court hereby **STAYS** this case pending mandatory mediation and arbitration pursuant to the Union's CBA.

IV.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Mediation and Arbitration is **GRANTED** and this action is hereby **STAYED in its entirety** pending completion of mediation and arbitration. To the extent Pritchard further moves for fees and costs, the motion is **DENIED**.

The Clerk of Court is respectfully directed to file a copy of this Opinion and Order on *pro se* Plaintiff. The Clerk of Court is further directed to close ECF Nos. 5 and 13.

**SO ORDERED.**


Dated: September 28, 2023
New York, New York

_/s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge

---

[11] The CBA also requires an employer to seek a stay, rather than dismissal of an action. (ECF 6-1, Ex. A, Article XVI, § 63 – Wage and Hour Claims, (d)) ("In the event that Employee(s) initiate litigation in a judicial forum on the Employee's wage and hour claims without first submitting to the mediation process described in this section . . . **the Employer shall not seek dismissal of the judicial action but may seek to have the action stayed** pending the completion of the mediation provided for herein.") (emphasis added).